UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

      - against -

SHAKEEM RANKIN,

        Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
23-CR-24 (MKB)

MARGO K. BRODIE, United States District Judge:

On June 20, 2024, a jury found Defendant Shakeem Rankin guilty of (1) receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2); (2) possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B); and (3) distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2). (Minute Entry for Trial Proceedings, June 20, 2024; Presentence Investigation Report ("PSR") ¶¶ 1–3, Docket Entry No. 84.) Rankin's sentencing is scheduled for May 21, 2025.

Rankin objects to the advisory United States Sentencing Commission Guidelines Manual (the "Guidelines") range calculation and seeks a sentence of time served.[1] For the reasons explained below, the Court denies Rankin's objections to the Guidelines and cannot impose a time served sentence.

**I.  Background**

 **a.  Offense conduct**

On May 4, 2021, Federal Bureau of Investigation (the "FBI") agents seized and searched

---

[1] (Sent'g Memo. & Mot. for Downward Variance for Def. Shakeem Rankin ("Def.'s Mem."), Docket Entry No. 85; Suppl. Sent'g Memo. of Def. Shakeem Rankin ("Def.'s Reply"), Docket Entry No. 92.)

cellphones belonging to a suspected child pornographer in St. Louis, Missouri (the "seller"). (PSR ¶ 10; Sent'g Memo. as to Shakeem Rankin by USA ("Gov't Resp.") 1, Docket Entry No. 88.) On the phones, they found conversations on an application called Kik in which the seller sold hyperlinks to approximately 2,347 videos and images of child pornography through a file sharing platform called MEGA for buyers to access the purchased images and videos. (PSR ¶ 10; Gov't Resp. 1.) Through chat logs, FBI agents identified Rankin as one of the buyers under the username "Mula Dussa." (PSR ¶ 11; Gov't Resp. 1.) Rankin sent money to the seller on April 9, 2021 and April 25, 2021 for child pornography according to chat logs and Cash App records and, in total, received four MEGA links containing approximately 2,347 images and videos.[2] The videos included an adult male anally penetrating and ejaculating inside a child approximately two years old or younger, an adult male orally penetrating a three-year-old girl, and an adult male orally penetrating and then attempting to anally penetrate an eight-year-old girl. (PSR ¶ 12; June 18 Trial Tr. 383:9–388:7; Gov't Resp. 6.)

On March 16, 2022, FBI agents executed a search warrant at Rankin's residence in New York and seized his cellphones, including an iPhone 12 Pro as well as three other iPhones and two Samsung phones. (PSR ¶ 13, June 18 Trial Tr. 346:16–348:7; Gov't Resp. 1.) On the iPhone 12 Pro, they found approximately 892 images and videos of child pornography, which depicted minors varying in age from toddlers through teenagers. (PSR ¶¶ 13, 18–19; Gov't Resp. 1–2, 8; June 18 Trial Tr. 366:17–367:7.) The videos included an adult male orally penetrating an approximately four-year-old girl, an adult male orally and then anally penetrating

---

[2] (PSR ¶ 11; June 17, 2024 Tr. of Crim. Cause for Jury Trial ("June 17 Trial Tr.") 257:17–260:17, United States v. Rankin, No. 23-CR-24, Docket Entry No. 75; June 18, 2024 Tr. of Crim. Cause for Jury Trial ("June 18 Trial Tr.") 331:20–336:10, 395:3–400:16, United States v. Rankin, No. 23-CR-24, Docket Entry No. 76; Gov't Resp. 1.)

an approximately eight-year-old girl, and an adult male orally penetrating an approximately six-
to eight-year-old girl.  (PSR ¶ 19; Gov't Resp. 6.)  Images included an approximately two- to
four-year old naked girl on her knees holding the erect penis of an adult male.  (PSR ¶ 19.)

FBI agents also found a Kik chat from October 9, 2021 in which Rankin discussed selling
child pornography to user "marlow.lil."  (PSR ¶ 20; June 18 Trial Tr. 411:14–412:7; Gov't Resp.
2.)  The chat log included the following exchange:

> Marlow.lil: Hey, we were chatting on Tumblr.
>
> Defendant: Yeah.  What's up bro. I have [Pretty Young Thing] bundle and some
> CP links.  I'll do $80 for both.  Or 70, what you tryna spend?  Or are you trading?
>
> Marlow.lil: Hey brother.  I just got scammed not too long ago.  Can you send me
> like a two-second video or some shit to verify it's real?

(PSR ¶¶ 14, 20; June 18 Trial Tr. 413:8–17; Gov't Resp. 2.)  On October 10, 2021, Rankin sent
screenshots of two sexually explicit videos, one containing a prepubescent female and the other
containing a teenage girl.  (Gov't Resp. 2; June 18 Trial Tr. 413:18–414:6; PSR ¶¶ 21–22.)  FBI
agents also identified chats on other applications, such as Telegram, between Rankin and another
user, discussing trading child pornography and sending child pornography files back and forth.
(PSR ¶ 23; June 18 Trial Tr. 390:1–18; 416:18–419:25; Gov't Resp. 1–2.)

During the FBI search, Rankin agreed to a recorded interview with FBI agents, during
which he admitted that he had purchased child pornography on Kik and that he resold child
pornography that he purchased through Cash App to Kik users.  (PSR ¶¶ 13–14; June 18 Trial
Tr. 361:10– 362:20; Gov't Resp. 2, 5; Tr. of FBI Interview 16:20–17:42, 29:11–29:40, annexed
to First Def.'s First Mot. in Limine as Ex. C, Docket Entry No. 37-5.)  He admitted that he used
Dropbox and MEGA to send the material he sold because that was how he had previously
received links to view child pornography and also shared the same links that he purchased when
he resold the materials.  (PSR ¶ 14; Tr. of FBI Interview 16:20–17:42.)  Rankin told the agents

that he did not have a computer and only used his mobile phone.  (PSR ¶ 16; Tr. of FBI

Interview at 29:42–31:00.)  At trial, the Government introduced the Cash App records and

testimony from an FBI special agent assigned to investigate the case.  (June 18 Trial Tr. 330:6–

333:11; Gov't Resp. 5.)  The FBI agent testified that the Mega links the seller sent to Rankin

contained child pornography and that seventeen of the transactions into Rankin's Cash App

account included the subject "Mega."  (June 18 Trial Tr. 333:12–336:15; Gov't Resp. 5.)

According to the Cash App records, Rankin received approximately $600 for child pornography

that he sold.  (PSR Addendum 1, Docket Entry No. 91; Gov't Resp. 5.)  Rankin denied ever

producing or making child pornography and has not spoken to any minors online, taken pictures

of minors, or asked any minors to send him nude pictures.  (PSR ¶ 15; Tr. of FBI Interview

20:16–52.)

     **b.  Probation Department's Guidelines calculation**

     On January 23, 2025, the Probation Department issued a PSR that calculated the advisory

Guidelines range as 292 to 365 months, based on a base offense level of 22, adjusted total

offense level of 40, and criminal history category of I.[3]  (PSR ¶¶ 33–48, 93–94; PSR Addendum

2–3, Docket Entry No. 91.)  The Probation Department included five sentencing enhancements

in its base offense level calculations:  (1) a two-level enhancement for child pornography

depicting prepubescent minors who had not attained the age of twelve years per Section

---

[3]  The Probation Department initially restricted the advisory Guidelines imprisonment
term to 240 months based on an estimated statutory maximum sentence of twenty years.  (PSR
¶ 94.)  The Government objected and argued that the statutory maximum is fifty years based on a
twenty-year maximum for receipt of child pornography; ten-year maximum for possession of
child pornography; and twenty-year maximum for distribution of child pornography, totaling
fifty years.  (Gov't Resp. 3–4.)  On May 9, 2025, the Probation Department filed an addendum to
the PSR in which it concurred with the Government and amended the PSR to establish the
Guidelines imprisonment range is 292 to 365 months without restriction.  (PSR Addendum 2–3,
Docket Entry No. 91.)

2G2.2(b)(2), (PSR ¶ 34); (2) a five-level enhancement for distributing images of child pornography to others for pecuniary gain with retail value of less than $6,500 per Section 2G2.2(b)(3)(A), (*id.* ¶ 35); (3) a four-level enhancement for child pornography that "portrayed sadistic or masochistic conduct and sexual abuse or exploitation of an infant" per Section 2G2.2(b)(4)(B), (*id.* ¶ 36); (4) a two-level enhancement for use of a computer for the possession, receipt, and distribution of child pornography per Section 2G2.2(b)(6), (*id.* ¶ 37); and (5) a five level enhancement because the offense involved at least 600 images depicting child pornography per Section 2G2.2(b)(7)(D), (*id.* ¶ 38).

Rankin objects to three of the sentencing enhancements: the (1) five-level increase for distributing images of child pornography to others for pecuniary gain; (2) four-level increase for child pornography that "portrayed sadistic or masochistic conduct and sexual abuse or exploitation of an infant"; and (3) two-level increase for the use of a computer for the possession, receipt, and distribution of child pornography.  (Def.'s Mem. 11–16; Def.'s Reply 2–5.)[4]  He argues that removal of the three enhancements would reduce his total offense level from 40 to 29, and with a criminal history category of I, would make the advisory Guidelines range 87 to 108 months.  (Def.'s Mem. at 16–17.)  Rankin provides a list of "representative" cases within the Second Circuit to demonstrate that a sentence lower than the statutory maximum of twenty years is "appropriate" and further advocates for a sentence of time served.[5]  (*Id.* at 2–11.)

---

[4]  Because Defendant's filings do not include page numbers, the Court refers to the page numbers assigned by the electronic case filing system.

[5]  As discussed in Section II.d *infra*, despite the fact that the PSR and the Government's sentencing submission demonstrate that Rankin faces a statutory mandatory minimum sentence of five years each on the receipt and distribution convictions, (Gov't Resp. at 2 & n.1; PSR Addendum 2–3), without explanation, Rankin argues that the Court can impose a time served sentence, (Def.'s Mem. 2–6; Def's Reply 1–2).

## II. Discussion

### a. Applicability of five-level increase for distribution for gain under Section 2G2.2(b)(3)(A)

Rankin argues that there was no evidence at trial that he sold or bartered child pornography for any monetary profit or something of value. (Def.'s Mem. 11; Def's Reply 3.) In addition, he contends that had he sold the images he allegedly offered to sell, the sale price would have been $80, which is half the amount that Rankin paid for the images. (Def.'s Mem. 12.) Because the transaction would result in a loss, Rankin argues that it cannot be counted as pecuniary gain and therefore the five-level enhancement does not apply. (*Id.* at 12–13.) Rankin also argues that the Government fails to demonstrate that his Cash App transactions "were clearly for the sale of child pornography" and that the Government's "speculation" that the labelling of a Cash App transaction "with the term 'mega' means the transaction was for the sale of child pornography where [Rankin] made a profit . . . should not warrant a five-level sentencing enhancement." (Def.'s Reply 3.)

The Government argues that the relevant conduct for the five-level enhancement includes not only the offense of conviction, which the Government identifies as Rankin's distribution of child pornography on October 10, 2021, but also "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." (Gov't Resp. 4–5 (quoting Guidelines § 1B1.3(a)(2).) The Government contends that it introduced evidence at trial that Rankin attempted to convince a Kik user to purchase child pornography from him on October 10, 2021. (*Id.* at 5.) The Government argues that the Cash App records introduced at trial showing that Rankin received approximately $600 across seventeen transactions for child pornography and Rankin's admission during recorded interviews that he sold child pornography on multiple occasions establish that Rankin distributed child pornography as part of the same

6

"common plan and course of conduct" as his attempted sale to the Kik user on October 10, 2021. (*Id.*) The Government also argues that Defendant's position that he did not make any pecuniary "gain" from selling child pornography is inconsistent with the evidence adduced at trial. (*Id.*)

Section 2G2.2(b)(3)(A) of the Guidelines provides for an increase of at least five levels under Section 2G2.2(b)(3)(A) if "the offense involved distribution for pecuniary gain." Guidelines § 2G2.2(b)(3)(A). The number of levels for the increase corresponds to the retail value of the material from the table in Section 2B1.1 (Theft, Property Destruction, and Fraud) but may not be less than five levels.[6] *Id.* The Application Notes define "distribution" as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." Guidelines § 2G2.2 cmt. 1. "Distribution for pecuniary gain" is defined as "distribution for profit." *Id.* The Guidelines do not define profit and neither the Second Circuit nor any other federal circuit court appears to define profit in the context of this Guideline. Black's Law dictionary defines profit as "[t]he excess of revenues over expenditures in a business transaction." Profit, Black's Law Dictionary (12th ed. 2024); *Rubenstein v. Live Nation Ent.*, No. 16-CV-7283, 2017 WL 2670749, at *6 n.2 (S.D.N.Y. June 20, 2017) ("[P]rofit [is] an excess of returns over expenditures in a transaction or series of transactions." (quoting *S. & S. Realty Corp. v. Kleer-Vu Indus., Inc.*, 575 F.2d 1040, 1043–44 (2d Cir. 1978))).

"As to objections, it is well settled that to rule against the defendant, the [c]ourt must find that the government has established the disputed allegations in the PSR by a preponderance of

---

[6] Section 2B1.1 only specifies incremental level increases for material with retail values exceeding $6,500. Guidelines § 2B1.1.

the evidence." *United States v. Anson*, No. 04-CR-6180, 2007 WL 174101, at *1 (W.D.N.Y. Jan. 19, 2007) (citing *United States v. Cordoba-Murgas*, 233 F.3d 704, 708–10 (2d Cir. 2000)); *United States v. Estevez*, No. 23-6599, 2024 WL 4116428, at *1 (2d Cir. Sept. 9, 2024) ("The government must prove by a preponderance of the evidence that the defendant's conduct meets the requirements of the enhancement." (quoting *United States v. Molina*, 356 F.3d 269, 274 (2d Cir. 2004))), *cert. denied*, 144 S. Ct. 577 (2024); *United States v. Osuba*, 67 F.4th 56, 65 (2d Cir. 2023) ("The district court must find facts relevant to a sentencing enhancement by a preponderance of the evidence." (citing *United States v. Mi Sun Cho*, 713 F.3d 716, 722 (2d Cir. 2013))).

The evidence the Government provides directly refutes Rankin's arguments that the pecuniary gain enhancement should not apply because he did not sell child pornography and would not have generated a profit had he done so. Rankin does not dispute that he spent $160 to purchase child pornography from the seller. (Def.'s Mem. 12.) The Government points to Rankin's Cash App records to demonstrate that he received approximately $600 across seventeen transactions involving child pornography and that Rankin confessed to selling the images on multiple occasions. (Gov't Resp. 5 (citing Gov't Trial Ex. 609).) As a result, Rankin profited in that he received more money for the material than he paid for it.[7]

Rankin is correct that speculation cannot be the basis for factual findings underlying the

---

[7] The Guidelines state that the enhancement applies if the offense conduct "involved distribution for pecuniary gain." Guidelines § 2G2.2(b)(3)(A). At least one court has noted that the Guidelines do not specify that the defendant had to distribute for pecuniary gain. *See United States v. Robinson*, 344 F. App'x 990, 992 (5th Cir. 2009) (rejecting defendant's argument that because he personally did not derive pecuniary gain from his purchase of website access to child pornography, the enhancement for pecuniary gain did not apply and affirming application of the enhancement because the defendant paying to gain access meant he knew that the distribution involved pecuniary gain to the website operators).

Section 2G2.2(b)(3)(A) distribution enhancement, but the Government has provided sufficient evidence for the Court to find by a preponderance of the evidence that Rankin's Cash App records demonstrate that he made $600 selling child pornography.  A jury found beyond a reasonable doubt that Rankin distributed child pornography.  (Minute Entry for Trial Proceedings, June 20, 2024.)  Rankin admitted that he sold child pornography multiple times, that he used MEGA to send the material he sold because that was how he had previously received links to view child pornography, and that he shared the same links that he purchased when he resold the materials.  (PSR ¶ 14; Tr. of FBI Interview 16:20–17:42; Gov't Resp. 5.)  At trial, the Government introduced the Cash App records and testimony from an FBI special agent assigned to investigate the case.  (June 18 Trial Tr. 330:6–333:11; Gov't Resp. 5.)  He established that the Mega links the seller sent to Rankin contained child pornography and that seventeen of the transactions into Rankin's Cash App account included the subject "Mega."  (June 18 Trial Tr. 333:12–336:15; Gov't Resp. 5.)  Moreover, as the Probation Department notes and the Cash App transactions demonstrate, the seventeen transactions that included "Mega" in the labelling included such subjects as "2 folders Megas" and "access to all folders."  (PSR Addendum 1; Gov't Ex. 609.)  Based on the totality of this evidence, it is more likely than not that the seventeen transactions including "Mega" in the subject line were for the sale of child pornography.  *United States v. Farnum*, 811 F. App'x 18, 21 (2d Cir. 2020) (finding district court properly applied a Section 2G2.2(b)(4) enhancement based on the court's factual findings that defendant possessed child pornography under the lower preponderance of the evidence standard).

Accordingly, a five-level increase on the basis that the offense involved distribution for pecuniary gain is warranted.

     **b.**   **Applicability of four-level increase for involvement of child pornography that portrayed sadistic or masochistic conduct or sexual abuse or exploitation of an infant under Section 2G2.2(b)(4)**

     Rankin argues that the sentencing enhancement only applies under Section 2G2.2(b)(4)(B) if the child pornography at issue portrayed both "sadistic or masochistic conduct" **and** "sexual abuse or exploitation of an infant." (Def.'s Mem. 13 (emphasis added).) Rankin contends that the Second Circuit has a two-part objective test for determining whether an image is "sadistic" such that the enhancement would apply if: "(1) an image depicts sexual activity involving a minor and (2) the depicted activity would have caused pain to the minor." (*Id.* (quoting *United States v. Freeman*, 578 F.3d 142, 146 (2d Cir. 2009).) He contends that the enhancement does not apply because there is no evidence that "any of the child pornography images or videos found within [his] possession portray any activity inflicting pain on a child or excessive cruelty" and therefore the enhancement for "sadistic or masochistic conduct" cannot apply. (*Id.* at 14–15; Def's Reply 4.)

     The Government argues that Rankin misreads the Guidelines and that the Guidelines provide that the enhancement applies if the child pornography at issue portrayed "sadistic or masochistic conduct or other depictions of violence" **or** "sexual abuse or exploitation of an infant or toddler." (Gov't Resp. 6 (quoting Guidelines § 2G2.2(b)(4).) The Government argues the enhancement applies because the offense involved images portraying sexual exploitation of infants and toddlers, which Rankin does not dispute. (*Id.*)

     The Probation Department concurs with the Government and adds that it erred in how it referenced the Guidelines in the original PSR as Section 2G2.2(b)(4) uses the word "or" between subsection (A) and (B).

     "Section 2G2.2(b)(4) calls for a four-level enhancement of a defendant's offense level if the offense involved material that portrays 'sadistic or masochistic conduct or other depictions of

violence' **or** 'sexual abuse or exploitation of an infant or toddler.'" *United States v. Bleau*, 930

F.3d 35, 38 n.2 (2d Cir. 2019) (emphasis added) (quoting Guidelines § 2G2.2(b)(4)). The

Application Notes define "material" as "a visual depiction, as defined in 18 U.S.C. § 2256."

Guidelines § 2G2.2 cmt. 1. Section 2256 defines "visual depiction" as including "undeveloped

film and videotape, data stored on computer disk or by electronic means which is capable of

conversion into a visual image, and data which is capable of conversion into a visual image that

has been transmitted by any means, whether or not stored in a permanent format." 18 U.S.C.

§ 2256(5). The term "sadism" includes "'the infliction of pain' for sexual gratification, 'delight

in physical or mental cruelty,' and the use of 'excessive cruelty.'" *Bleau*, 930 F.3d at 40

(quoting *Freeman*, 578 F.3d at 145). "[W]here a sentencing court finds, by a preponderance of

the evidence, that (1) an image depicts sexual activity involving a minor and (2) the depicted

activity would have caused the minor pain, it need make no further findings in order to impose a

four-level enhancement under § 2G2.2(b)(4)." *Freeman*, 578 F.3d at 147–48; *Bleau*, 930 F.3d at

40 (quoting *Freeman*). "There is . . . no need for the sentencing court to determine either why

the defendant possessed the images or whether he derived pleasure from them." *Freeman*, 578

F.3d at 146. "[L]iability for receiving violent child pornography is strict. Sentencing

enhancements generally are imposed on the basis of strict liability rather than of the defendant's

intentions or even his lack of care." *Id.* (quoting *United States v. Richardson*, 238 F.3d 837, 840

(7th Cir. 2001)); *see* Guidelines §§ 2G2.2(b)(4); 2G2.2 cmt. 3 ("Subsection (b)(4)(A) applies if

the offense involved material that portrays sadistic or masochistic conduct or other depictions of

violence, regardless of whether the defendant specifically intended to possess, access with intent

to view, receive, or distribute such materials.").

  Rankin's arguments are without merit because he relies solely on the Probation

Department's erroneous quotation rather than the actual text of the Guidelines.  Rankin quotes

paragraph 36 of the original PSR, which states that "[s]ince the offense involved child

pornography that portrayed sadistic or masochistic conduct and sexual abuse or exploitation of

an infant, four levels are added per [Guideline] 2G2.2(b)(4)(B)" and argues based on this

quotation that for the enhancement to apply the child pornography must have portrayed both

"sadistic or masochistic conduct **and** sexual abuse or exploitation of an infant."  (Def.'s Mem. 13

(quoting PSR ¶ 36).)  The Probation Department correctly clarified in the first addendum to the

PSR that the Guidelines enhancement "uses 'or' rather than 'and,' meaning that if the child

pornography satisfied either [Guideline] § 2G2.2(b)(4)(A) or (B), then the enhancement would

apply" and that the Government's basis for the enhancement was subsection B, sexual abuse or

exploitation of an infant.  (PSR Addendum 2; Gov't Resp. 6.)  Courts may apply the Guidelines

enhancement when only one prong is satisfied.  *See Bleau*, 930 F.3d at 38 n.2 ("Section

2G2.2(b)(4) calls for a four-level enhancement of a defendant's offense level if the offense

involved material that portrays 'sadistic or masochistic conduct or other depictions of violence'

**or** 'sexual abuse or exploitation of an infant or toddler."  (emphasis added) (quoting Guidelines

§ 2G2.2(b)(4))).

Moreover, even if the Guidelines require the Government to satisfy both prongs as

Rankin argues, the videos and images he received or possessed show both sadistic conduct and

sexual acts involving an infant or toddler and thus satisfy either prong necessary for the Section

2G2.2(b)(4) enhancement to apply.  Rankin received a video of a man anally penetrating and

ejaculating inside a male child approximately two years old or younger, (PSR ¶ 12; Gov't Resp.

6), and was in possession of a video depicting an eight year being vaginally and anally

penetrated, (June 18 Trial Tr. 386:22–387:9; PSR ¶ 19.)  These videos "depict[] sexual activity

involving a minor," and also "depict[] activity [that] would have to cause the minor pain" and therefore "establish a sufficient factual basis for the imposition of the enhancement" for sadistic conduct under subsection A. *Bleau*, 930 F.3d at 41 (concluding district court's application of enhancement for sadistic conduct for videos portraying minor victims performing sex acts on themselves with sex toys was not clearly erroneous because district court found videos depicted minors between the ages of 12 and 14 "being mentally degraded and humiliated and harm" and a child appearing "quite nervous," sad, and placing her hand over her face to obscure it"). The video of sexual activity with a child under two years old as well as the pornographic videos involving a three year and four-year-old and image of a two- to four-year-old, (June 18 Trial Tr. 386:3–6; PSR ¶ 19; Gov't Resp. 6), demonstrate "sexual abuse or exploitation of an infant or toddler" under subsection B. *Bleau*, 930 F.3d at 38 (quoting Guidelines § 2G2.2(b)(4)(B)).

Accordingly, a five-level increase on the basis that the offense involved either material that portrayed sadistic or masochistic conduct or sexual abuse or exploitation of an infant under USSG §2G2.2(b)(4) is warranted.

### c.  Applicability of two-level increase for the use of a computer for the possession, receipt, and distribution of child pornography Section 2G2.2(b)(6)

Rankin argues the Government presented no evidence at trial that he used a computer for the possession, receipt, or distribution of child pornography; rather, the material in his possession was obtained and stored on an iPhone. (Def.'s Mem. 15.) He argues that the sentencing enhancement does not include the use of a cell phone or smartphone, and relies on a Seventh Circuit case, *United States v. Patterson*, 576 F.3d 431, 443 (7th Cir. 2009), where the court reversed a district court's application of a different two-level enhancement for third party solicitation using a computer because it found that no computers were used to communicate directly with the victim or the victim's custodian. (*Id.* at 15–16.) He also argues that the

13

Guideline's definition of computer "does not specifically include a cell phone or smartphone," if the Guidelines were "intended to cover the use of a smartphone or cell phone, it would specifically provide for it," and that the Government "provides no binding case law from the Second Circuit that provides a cell phone or smartphone is a computer under the definition" in 18 U.S.C. § 1030(e)(1).  (Def.'s Reply 4–5.)

The Government argues that under the definition of "computer" in 18 U.S.C. § 1030(e)(1), which the Guidelines Application Notes use to define "computer" for the purposes of the enhancement, a cell phone is a computer.  (Gov't Resp. 6.)  The Government contends that multiple circuits have held that a cell phone is a computer under section 1030(e)(1) and in support cites cases from the Seventh, Eighth, Tenth, and Eleventh Circuits.  (*Id.* at 6–7.)  The Government distinguishes the case Rankin relies on, *Patterson*, by noting that the case took place in 2005 before the release of smartphones and the case analyzed a different Guidelines provision and the issue of whether a computer was used to communicate with a victim, neither of which is at issue in this case.  (*Id.* at 7.)  The Government argues that because it is undisputed that Rankin used his iPhone to buy, sell, and possess child pornography, the enhancement applies.  (*Id.*)

The Probation Office agrees with the Government and contends that the enhancement applies because "a cellphone, which at the time of the instant offense, was a smart phone, meets many of the definitions in [18 U.S.C. §1030(e)(1)]" and Rankin's iPhone is "considered a computer" because it was an "electronic, high speed data processing device that was able to perform arithmetic or storage functions." (PSR Addendum 2.)

Section 2G2.2(b)(6) provides for a two-level increase "[i]f the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material."  Guidelines

§ 2G2.2(b)(6).  The Application Notes refer to 18 U.S.C. § 1030(e)(1), part of the Computer

Fraud and Abuse Act ("CFAA"), for the definition of a "computer" and similarly refer to

"section 230(e)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2))" for the definition

of an "interactive computer service." Guidelines § 2G2.2. cmt. 1.  A computer is defined as "an

electronic, magnetic, optical, electrochemical, or other high speed data processing device

performing logical, arithmetic, or storage functions, and includes any data storage facility or

communications facility directly related to or operating in conjunction with such device, but such

term does not include an automated typewriter or typesetter, a portable hand held calculator, or

other similar device."  18 U.S.C. § 1030(e)(1).  An interactive computer service "means any

information service, system, or access software provider that provides or enables computer

access by multiple users to a computer server, including specifically a service or system that

provides access to the Internet and such systems operated or services offered by libraries or

educational institutions." *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d

Cir. 2016) (quoting 47 U.S.C. § 230(f)(2)).

      The Second Circuit has not yet addressed the question of whether smartphones constitute

a computer under section 1030(e)(1).[8]  District courts in the Second Circuit have concluded that

cellular phones constitute computers in cases involving the CFAA, the statute cross-referenced in

---

[8]  The Second Circuit expressly declined to decide whether a district court erred in applying a computer-use enhancement under Guidelines 2G1.3(b)(3)(A) where the defendant used his cell phone rather than a computer, along with other arguments the defendant raised, because the district court had a separate basis to apply the enhancement, and any error would have been harmless.  The court noted that it did not reach the "present[ed] complex and important questions of law that have not previously been resolved in this Circuit." *United States v. Cramer*, 777 F.3d 597, 603 (2d Cir. 2015).

the Sentencing Guidelines for the definition of a computer.[9]  *See Broidy v. Glob. Risk Advisors LLC*, No. 19-CV-11861, 2023 WL 6258135, at *10 (S.D.N.Y. Sep. 26, 2023) (listing allegations pertaining to both computers and cell phones in determining that plaintiff adequately alleged computer-related losses under the CFAA); *United Rentals, Inc. v. Wilper*, 626 F. Supp. 3d 546, 548 (D. Conn. 2022) (dismissing CFAA claim because there was no dispute that defendant had authorization to access the plaintiff's iPhone); *see also Resnik v. Coulson*, No. 17-CV-676, at 11 (E.D.N.Y. Sept. 19, 2019) (Jury Instructions) (instructing jury that for CFAA claims "[a] cellular phone that is connected to the internet or used to make phone calls between states is considered a 'protected computer' under the law").  The Circuit courts of appeal that have addressed the issue — the First, Third, Seventh,[10] Eighth, and Eleventh Circuits — have all concluded that smartphones constitute computers for purposes of computer-use enhancements under the Guidelines.[11]  The Fifth and Tenth Circuits have affirmed application of computer-use

_____

[9]  "The CFAA, dealing with fraud and related activity in connection with computers, provides in part that it is unlawful for a person (a) to 'intentionally access[] a computer without authorization or exceed[] authorized access, and thereby obtain[ ] . . . information from any protected computer,' or (b) to 'conspire[]' to do so."  *United States v. Cuomo*, 125 F.4th 354, 363 (2d Cir. 2025) (emphases omitted and alterations in original) (quoting 18 U.S.C. § 1030(a)(2)(C) and (b)).  The CFAA defines "protected computer" in part as a computer "which is used in or affecting interstate or foreign commerce or communication."  *Id*. (quoting 18 U.S.C. § 1030(e)(2)(B)).

[10]  The Seventh Circuit has not decided the issue but has interpreted the definition of computer in 18 U.S.C. § 1030(e)(1) in a manner that has been understood as determining that cell phones are within the broad definition of a computer.  *United States v. Mitra*, 405 F.3d 492, 495 (7th Cir. 2005) ("As more devices come to have built-in intelligence, the effective scope of the statute grows."); *see United States v. Shamsud-Din*, 580 F. App'x 468, 472 (7th Cir. 2014) (noting without deciding that "[w]e have said in another context that this very, very broad definition [under section 1030(e)(1)] could encompass a cell phone").

[11]  *See, e.g.*, *United States v. Wise*, 134 F.4th 745, 749 (3d Cir. 2025); *United States v. Foard*, 108 F.4th 729, 736 (8th Cir. 2024).  The Eleventh Circuit held in a precedential decision that a cell phone qualifies as a computer and in subsequent summary orders has extended this holding to smartphones.  *See United States v. Crow*, No. 22-14267, 2023 WL 8469452, at *4

enhancement based on cell phone use in summary orders. *See United States v. Gallegos*, No. 22-2107, 2023 WL 8802687, at *2 (10th Cir. Dec. 20, 2023) (explaining that under the Guidelines, convictions for "sexual abuse of a minor, including the production of sexually-explicit content, and possession of child pornography . . . are entitled to enhanced sentences if the defendant used a computer (cell phone) or interactive computer service (social media, such as Snapchat) during the crimes" and that "[a]s a threshold matter, a cell phone is a 'computer' under federal law"); *United States v. Bluitt*, 672 F. App'x 452, 453 (5th Cir. 2017) (finding district court did not err in applying enhancement under Guidelines § 2G1.3(b)(3)(B) for use of a computer to "entice, encourage, or solicit a person to engage in prohibited sexual conduct with the minor" because the defendant provided a cell phone to a minor and "the district court plausibly found that there was no reason for [the defendant] to provide the phone to the minor except to facilitate prostitution").

The Third Circuit most recently held that smartphones are computers in *United States v. Wise*, where the defendant appealed a 288-month sentence for "possessing and transporting child pornography, attempting to entice a minor online, and attempting to transfer obscene matter to a minor" and challenged the district court's application of the two-level computer-use enhancement under Guidelines § 2G2.2(b)(6), arguing it did not apply because he used an iPhone. 134 F.4th 745, 747, 749 (3d Cir. 2025). The Third Circuit determined that the text of the Guidelines itself was unambiguous and therefore it did not need to consider the Guidelines commentary, which refers to the definition of computer in 18 U.S.C. § 1030(e). *Id.* at 749. The Third Circuit instead examined two definitions of computer from standard dictionaries[12] and

---

(11th Cir. Dec. 7, 2023) (concluding the defendant's "use of an iPhone falls within the unambiguous, plain reading of 'use of a computer' as it appears in § 2G2.1(b)(6)").

[12] The dictionary definitions the Third Circuit relied on in its analysis are: (1) "a programmable usu[ally] electronic device that can store, retrieve, and process data," *Wise*, 134

found smartphones were covered in those definition because they "store and communicate information and host software in the form of apps, and people frequently use them to access the internet." *Id.* After noting that the dictionary definitions would be enough "to solve the puzzle" and "are consistent with common sense," the Third Circuit added that "a smartphone also fits the evident purpose of the Guideline[s]" because "[m]edia stored digitally is easier to store and distribute" and "the Guideline[s] increases the penalty for having or distributing media involving the sexual exploitation of a minor in digital format." *Id.*

In contrast to the Third Circuit's approach, the Seventh, Eighth, and Eleventh Circuits have referred to the Guidelines commentary, to analyze the definition of computer under 18 U.S.C. § 1030(e) to address whether cell phone or smartphones constitute computers. The Seventh Circuit in *United States v. Mitra* interpreted section 1030 as excluding only the devices listed in the statute — automatic typewriters, typesetters, and handheld calculators — and "not[ed] that '[a]s more devices come to have built-in intelligence, the effective scope of the statute grows," which "might prompt Congress to amend the statute but does not authorize the judiciary to give the existing version less coverage than its language portends." 405 F.3d 492, 495 (7th Cir. 2005). The court later cited *Mitra* in a summary order and noted that the "very, very broad definition [under Section 1030(e)(1)] could encompass a cell phone." *United States v. Shamsud-Din*, 580 F. App'x 468, 472 (7th Cir. 2014). Similarly, the Eighth Circuit in *United*

---

F.4th at 749 (quoting Computer, Merriam-Webster's Collegiate Dictionary (11th ed. 2003), and (2) "[a]n electronic device . . . which is used to store, manipulate, and communicate information, perform complex calculations, or control or regulate other devices or machines," "capable of receiving information (data) and of processing it in accordance with variable procedural instructions (programs or software)," and often used "in the home or workplace . . . for handling text, images, music, and video, accessing and using the internet, communicating with other people (e.g. by means of email), and playing games," *id.* (quoting Computer, Oxford English Dictionary (3d ed. 2025)).

*States v. Kramer* determined that even an ordinary cell phone "used only to place calls and send text messages" constitutes a computer because the section 1030(e) definition is "exceedingly broad" and "captures any device that makes use of an electronic data processor."  631 F.3d 900, 902–03 (8th Cir. 2011).[13]  The Eighth Circuit found in *Kramer* that a cell phone is an "electronic . . . or other high speed data processing device" that "perform[ed] logical, arithmetic, or storage functions" when used to place a call or send text messages as "the phone stores sets of characters that are available to a user when typing a message." *Id.* at 903, 905.  Relying on its analysis in *Kramer*, the Eighth Circuit recently affirmed a district court's application of a computer-use sentencing enhancement based on the use of a smartphone.  *United States v. Foard*, 108 F.4th 729, 736 (8th Cir. 2024) ("Using a smart phone constitutes use of a computer."  (citing *Kramer*, 631 F.3d at 902)).  In *United States v. Mathis*, the Eleventh Circuit agreed with the Eighth Circuit's observations in *Kramer* and held that "a defendant's use of a cell phone to call and send text messages constitutes the use of a computer, as that term is defined in 18 U.S.C. § 1030(e)(1), and warrants imposition of an enhancement under Guidelines § 2G2.1(b)(6)." *United States v. Mathis*, 767 F.3d 1264, 1283 (11th Cir. 2014), *abrogated on other grounds by Lockhart v. United States*, 577 U.S. 347 (2016).  The court also noted that "[n]othing in the statutory definition of a computer requires that the device have a connection to the Internet or Internet

---

[13]  The Eighth Circuit also concluded in *United States v. Kramer* that "each time an electronic processor performs any task — from powering on, to receiving keypad input, to displaying information — it performs logical, arithmetic, or storage functions."  631 F.3d 900, 903 (8th Cir. 2011).  Similarly, in *United States v. Nosal*, the Ninth Circuit observed, in deciding the reach of criminal liability under the CFAA, that "[t]he Internet is a means for communicating via computers" and that [w]henever we access a web page, commence a download, post a message on somebody's Facebook wall, shop on Amazon, bid on eBay, publish a blog, rate a movie on IMDb, read www.NYT.com, watch YouTube and do the thousands of other things we routinely do online," these are examples of "using one computer to send commands to other computers at remote locations."  676 F.3d 854, 861 (9th Cir. 2012).

capabilities." *Id.*  In subsequent summary orders, the Eleventh Circuit extended its holding in *Mathis* to smartphones.  *See, e.g.*, *United States v. Crow*, No. 22-14267, 2023 WL 8469452, at *4 (11th Cir. Dec. 7, 2023) (concluding the defendant's "use of an iPhone falls within the unambiguous, plain reading of 'use of a computer' as it appears in § 2G2.1(b)(6)").

The First Circuit has twice affirmed in precedential decisions district court applications of different sentencing enhancements that require the use of a computer as defined in 18 U.S.C. § 1030 based solely on the defendant's use of a smartphone.  *See United States v. Montijo-Maysonet*, 974 F.3d 34, 52–53 (1st Cir. 2020) (rejecting the defendant's argument that computer-use enhancement under Guidelines § 2G1.3(b)(3)(A) did not apply on the basis that he did not use a computer because there was sufficient trial evidence to show that the defendant used Kik on his smartphone to entice the victim to go on a trip); *United States v. Houston*, 857 F.3d 427, 435–36 (1st Cir. 2017) (finding the district court did not err in applying enhancement under Guidelines § 2G1.1(b)(3)(B) for offenses involving the use of a computer to "solicit a person to engage in prohibited sexual conduct with the minor" because the defendant "jointly undertook criminal activity that involved using smartphones to solicit men to engage in prohibited sexual conduct with Minor A").

Rankin's use of an iPhone for the offense conduct meets the requirements for use of a computer under the definition of computer in 18 U.S.C. § 1030(e).[14]  The iPhone is an "electronic . . . high speed data processing device." 18 U.S.C. § 1030(e)(1); *see Kramer*, 631

---

[14]  18 U.S.C. § 1030(e)(1) (cited in Guidelines § 2G2.2, cmt. 1) (defining computer as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device").

F.3d at 902 (finding a cell phone is an "electronic . . . or other high speed data processing device" that "perform[ed] logical, arithmetic, or storage functions" when used to place a call or send text messages as "the phone stores sets of characters that are available to a user when typing a message"). The iPhone performed storage functions for Rankin as FBI agents found approximately 892 images and videos of child pornography stored on Rankin's iPhone as well as chat logs from conversations Rankin had on mobile apps such as Telegram and Kik. (PSR ¶¶ 13, 18–19, 23; Gov't Resp. 1–2; June 18 Trial Tr. 361:10–362:20, 390:1–18, 411:14–412:7, 416:18–419:25.) *Wise*, 134 F.4th at 749 (finding defendant's use of his iPhone triggered computer-use enhancement because the device "store[s] and communicate[s] information and host software in the form of apps, and people frequently use them to access the internet"). Rankin used the iPhone extensively to access mobile applications and to access the internet, to receive and distribute images and videos, and to exchange messages and illegal material with sellers and buyers of child pornography. *See Riley* v. *California*, 573 U.S. 373, 393 (2014) ("The term 'cellphone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone"); *Crow*, 2023 WL 8469452, at *4 (finding court did not err in applying enhancement based on defendant's smartphone use because defendant's "iPhone possessed much of the functionality of a typical computer, and he used it as such: sending and receiving messages over the internet, booking a hotel room, and filming and distributing a video"); *Montijo-Maysonet*, 974 F.3d at 52–53 (rejecting defendant's argument that computer-use enhancement did not apply because he did not use a computer due to trial evidence showing that the defendant used Kik on his smartphone as part of the offense

conduct).[15]

---

[15]  The computer-use enhancement that Rankin challenges also provides for a two-level increase when an interactive computer service is used.  Guidelines § 2G2.2(b)(6) (providing for a two-level increase "[i]f the offense involved the use of a **computer or an interactive computer service** for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material" (emphasis added)).  Although the Government and the Probation Department rely solely on the computer as a basis for applying the Guidelines § 2G2.2(b)(6) enhancement, the two-level increase for interactive computer services appears to also apply because the Sentencing Commission specifically added it to broaden the devices that fall within the computer-use enhancement and Rankin appears to have used interactive computer services as part of the offense conduct.  As used in Guidelines § 2G2.2(b)(6), an interactive computer service "means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) (quoting 47 U.S.C. § 230(f)(2)).  The term "information service" is further defined to mean the "offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications, and includes electronic publishing . . . ." 47 U.S.C. § 153(24).  The Sentencing Commission added interactive computer services to the computer-use enhancement after "conclud[ing] that the term 'computer' did not capture all types of Internet devices," and thus specifically intended for the amendment to expand the types of devices covered under the enhancement.  U.S. Sent'g Comm'n, *Guidelines Manual* App. C. (Vol. III), Amendment 664 (Nov. 1, 2004).  "Courts typically have held that internet service providers, website exchange systems, online message boards, and search engines fall within" the definition of "interactive computer service" under 47 U.S.C. § 230.  *LeadClick*, 838 F.3d at 174 (collecting cases).  They also "have repeatedly concluded that the definition of an [interactive computer service] includes 'social networking sites like Facebook.com, and online matching services like Roommates.com and Matchmaker.com,' which, like Grindr, provide subscribers with access to a common server." *Herrick v. Grindr LLC*, 765 F. App'x 586, 589–90 (2d Cir. 2019); *see Knight First Amend. Inst. at Columbia Univ. v. Trump*, 953 F.3d 216, 222 n.2 (2d Cir. 2020) (describing "social media websites" as within the scope of an interactive computer services under section 230).

The PSR lists several mobile applications Rankin used as part of the offense conduct, including Kik, MEGA, Tumblr, Telegram, and Cash App.  Based on the definitions of these applications provided at trial and in the PSR, they appear to constitute interactive computer services because they are information services that offer the "capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications" and likely provide access by multiple users to a common computer server. 47 U.S.C. § 230(f)(2).  *See, e.g.*, *Poole v. Tumblr, Inc.*, 404 F. Supp. 3d 637, 642 (D. Conn. 2019) ("Specifically, Tumble 'is a provider or user of an interactive computer service'" under section 230); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d at 1248–49 (S.D. Fla. 2020) (discussing Kik owner as operating an interactive computer service).

### d.  The Court has no discretion to impose a sentence of time served as requested by Rankin

Rankin argues that the Court has discretion to impose a sentence of time served because the Guidelines are advisory and are but one factor in determining the sentence.[16]  (Def.'s Mem. 2–3.)  He argues that a time served sentence is warranted based on character references from his family provided as attachments and because he has no criminal history, no pending charges or other arrests, and as a first-time offender poses a lower risk of recidivism.  (*Id.* at 1–3, 7.)  Rankin further contends that the Government fails to provide a basis for the Court to deny a time served sentence and that "a sentence even at the low end [of] the sentencing range proposed by the PSR is not in line with the sentences from cases within this Circuit where the convictions were far more egregious than the Defendant's offenses."  (Def's Reply 1–2; Def.'s Mem. 3–6.)

The Government argues that while the Guidelines are advisory, the statutory mandatory minimum sentences of five years of imprisonment for Rankin's conviction for the receipt and distribution of child pornography are not advisory.  (Gov't Resp. at 2 & n.1.)  The Government contends that the lowest possible sentence is five years imprisonment because the Court has discretion to run the minimum sentences for the receipt and distribution counts concurrently.  (*Id.* at 2.)

For receipt and distribution of child pornography under 18 U.S.C. § 2252(a)(2), the statutory minimum sentence is five years' incarceration under 18 U.S.C. § 2252(b)(1).[17]  There is

---

[16]  Rankin has served less than a day in custody; he was arrested on January 23, 2023 and released on bond the same day.  (Minute Entry for Proceedings held before Magistrate Judge James R. Cho, Docket Entry No. 2.)

[17]  *See* 18 U.S.C. § 2252(b)(1) ("Whoever violates, or attempts or conspires to violate, paragraph (1), (2), or (3) of subsection (a) shall be fined under this title and imprisoned not less than [five] years and not more than [twenty] years, but if such person has a prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under the Uniform

no statutory minimum for possession of child pornography.

Because Rankin was convicted by a jury of receipt and distribution of child pornography pursuant to 18 U.S.C. § 2252(a)(2), he faces a mandatory minimum sentence of five years in custody. The Court therefore has no discretion to sentence Rankin to a time served sentence.[18]

### III. Conclusion

For the foregoing reasons, the Court denies Rankin's objections and finds the Guidelines enhancements for offenses involving (1) distribution for pecuniary gain with retail value of less than $6,500 pursuant to Section 2G2.2(b)(3)(A); (2) material that portrays sadistic or masochistic conduct or other depictions of violence or sexual abuse or exploitation of an infant or toddler pursuant to Section 2G2.2(b)(4); and (3) use of a computer or an interactive computer service for

---

Code of Military Justice or the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, or sex trafficking of children, such person shall be fined under this title and imprisoned for not less than [fifteen] years nor more than [forty] years.").

[18] The Court recognizes that the Second Circuit has admonished "that § 2G2.2 'is fundamentally different from most [Guidelines provisions] and that, unless applied with great care, [it] can lead to unreasonable sentences that are inconsistent with what [the sentencing factors in 18 U.S.C.] § 3553 require[].'" *United States v. Baldwin*, 743 F.3d 357, 361 (2d Cir. 2014) (alterations in original) (quoting *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010)); *Bleau*, 930 F.3d at 41 ("As always, we urge district courts to 'take seriously the broad discretion they possess in fashioning sentences under § 2G2.2,' recognizing that it is a unique Guideline that can 'easily generate unreasonable results.'" (quoting *Dorvee*, 616 F.3d at 188)). While the "Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices," "the Commission did not use this empirical approach in formulating the Guidelines for child pornography." *Dorvee*, 616 F.3d at 184. Rather, "at the direction of Congress, the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties." *Id.* (citations omitted). The Second Circuit has noted that the risk of an unreasonable sentence is greatest "[u]nder those narrow circumstances . . . where the defendant was not involved in production of child pornography and had no contact with children," because "in this limited context . . . strict adherence to the Guidelines could result in 'virtually no distinction between the sentences for . . . the most' and least serious offenders." *United States v. Muzio*, 966 F.3d 61, 65 (2d Cir. 2020) (quoting *Dorvee*, 616 F.3d at 184, 186–87).

the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, pursuant to Section 2G2.2(b)(6) apply to the Guidelines advisory range calculation for his sentencing.  In addition, the Court has no discretion to impose a sentence of time served as requested by Rankin.

Dated:  May 21, 2025
        Brooklyn, New York

                                    SO ORDERED:


                                    _____/s/MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge