UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

- against -

SHAKEEM RANKIN,

Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
23-CR-24 (MKB)
26-CV-3414 (MKB)

MARGO K. BRODIE, United States District Judge:

On May 21, 2025, the Court sentenced Defendant Shakeem Rankin to seventy-two months imprisonment and a supervised release term of five years following a jury conviction for: (1) receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2); (2) possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B); and (3) distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2).[1] (J. 1–3; Min. Entry for Trial Proceedings held June 20, 2024; Indictment ¶¶ 1–3, Docket Entry No. 1.)

On June 8, 2026, proceeding *pro se* and currently incarcerated at the Fort Dix Federal Correctional Institution, Rankin filed the above-captioned petition pursuant to 28 U.S.C. § 2255 alleging that he was denied effective assistance of counsel (the "Petition").[2] Rankin requests that

---

[1] The Court sentenced Rankin to sixty months in custody for the receipt of child pornography and sixty months in custody for the distribution of child pornography with forty-eight of the sixty months for distribution to run concurrently with the sentence for receipt; and twenty-four months in custody for possession of child pornography to run concurrently with his sentences for receipt and distribution. (J. 3, Docket Entry No. 98.) The Court also sentenced Rankin to five years of supervised release on each count to run concurrently. (*Id.* at 4.)

[2] (Mot. to Vacate ("Pet."), Docket Entry No. 118; Mem. in Supp. of Pet. ("Pet'r's Mem."), Docket Entry No. 119; Gov't's Mem. in Opp'n to Pet. ("Gov't's Opp'n"), Docket Entry No. 121; Reply in Supp. of Pet. ("Pet'r's Reply"), Docket Entry No. 122.)

the Court vacate his conviction, remand the case for further proceedings, appoint new counsel, and grant any and all other relief necessary. (Pet'r's Mem. 17.) For the reasons explained below, the Court denies Rankin's Petition pursuant to 28 U.S.C. § 2255.

## I. Discussion

### a. Background

On May 4, 2021, Federal Bureau of Investigation (the "FBI") agents seized and searched cellphones belonging to a suspected child pornographer in St. Louis, Missouri (the "seller"). (Presentence Investigation Report ("PSR") ¶ 10, Docket Entry No. 84; Sent'g Mem. ("Gov't Resp.") 1, Docket Entry No. 88.) On the phones, they found conversations on an application called Kik in which the seller sold hyperlinks to approximately 2,347 videos and images of child pornography through a file sharing platform called MEGA for buyers to access the purchased images and videos. (PSR ¶¶ 10–11; Gov't Resp. 1.) Through chat logs, FBI agents identified Rankin as one of the buyers under the username "Mula Dussa." (PSR ¶ 11; Gov't Resp. 1.) Rankin sent money to the seller on April 9, 2021 and April 25, 2021 for child pornography according to chat logs and Cash App records and, in total, received four MEGA links containing approximately 2,347 images and videos.[3] The videos included an adult male anally penetrating and ejaculating inside a child approximately two years old or younger, an adult male orally penetrating a three-year-old girl, and an adult male orally penetrating and then attempting to anally penetrate an eight-year-old girl. (PSR ¶ 12; June 18 Trial Tr. 383:9–388:7; Gov't Resp. 5.)

[3] (PSR ¶ 11; June 17, 2024 Trial Tr. ("June 17 Trial Tr.") 257:17–260:17, Docket Entry No. 75; June 18, 2024 Trial Tr. ("June 18 Trial Tr.") 331:20–336:10, 395:3–400:16, Docket Entry No. 76; Gov't Resp. 1.)

On March 16, 2022, FBI agents executed a search warrant at Rankin's residence in New York and seized his cellphones, including an iPhone 12 Pro as well as three other iPhones and two Samsung phones. (June 18 Trial Tr. 346:16–348:7; Gov't Resp. 1.) On the iPhone 12 Pro, agents found approximately 892 images and videos of child pornography, which depicted minors varying in age from toddlers through teenagers. (PSR ¶¶ 13, 18–19; Gov't Resp. 1–2, 8; June 18 Trial Tr. 366:17–367:7.) The videos included an adult male orally penetrating an approximately four-year-old girl, an adult male orally and then anally penetrating an approximately eight-year-old girl, and an adult male orally penetrating an approximately six- to eight-year-old girl. (PSR ¶ 19; Gov't Resp. 5.) The images included an approximately five- to seven-year-old half-naked girl laying on her back with her legs spread out, an approximately eight- to ten-year-old girl laying on her back with her knees spread out and shins duct taped to the back of her thighs, and an approximately two- to four-year-old naked girl on her knees holding the erect penis of an adult male. (PSR ¶ 19.)

FBI agents also found a Kik chat from October 9, 2021, in which Rankin discussed selling child pornography to user "marlow.lil." (PSR ¶ 20; June 18 Trial Tr. 411:14–412:7; Gov't Resp. 2.) The chat log included the following exchange:

> Marlow.lil: Hey, we were chatting on Tumblr.
>
> Defendant: Yeah. What's up bro. I have [Pretty Young Thing] bundle and some CP links. I'll do $80 for both. Or 70, what you tryna spend? Or are you trading?
>
> Marlow.lil: Hey brother. I just got scammed not too long ago. Can you send me like a two-second video or some shit to verify it's real?

(PSR ¶¶ 14, 20; June 18 Trial Tr. 413:8–17; Gov't Resp. 2.) On October 10, 2021, Rankin sent screenshots of two sexually explicit videos, one containing a prepubescent female and the other containing a teenage girl. (Gov't Resp. 2; June 18 Trial Tr. 413:18–414:6; PSR ¶¶ 21–22.) FBI agents also identified chats on other applications, such as Telegram, between Rankin and another

user, discussing trading child pornography and sending child pornography files back and forth. (PSR ¶ 23; June 18 Trial Tr. 390:1–18, 416:18–419:25; Gov't Resp. 1–2.)

During the FBI search, Rankin agreed to a recorded interview with FBI agents, during which he admitted that he had purchased child pornography on Kik and that he resold child pornography that he purchased through Cash App to Kik users. (PSR ¶¶ 13–14; June 18 Trial Tr. 361:10– 362:20; Gov't Resp. 2, 5; Tr. of FBI Interview 16:20–17:42, 29:11–29:40, annexed to Def.'s First Mot. in Limine as Ex. C, Docket Entry No. 37-5.) He admitted that he used Dropbox and MEGA to send the material he sold because that was how he had previously received links to view child pornography and that he also shared the same links that he purchased when he resold the materials. (PSR ¶ 14; Tr. of FBI Interview 16:20–17:42.) Rankin told the agents that he did not have a computer and only used his mobile phone. (PSR ¶ 16; Tr. of FBI Interview at 29:42–31:00.)

At trial, the Government introduced the Cash App records and testimony from an FBI special agent assigned to investigate the case. (June 18 Trial Tr. 330:6–333:11; Gov't Resp. 5.) The FBI agent testified that the Mega links the seller sent to Rankin contained child pornography and that seventeen of the transactions into Rankin's Cash App account included the subject "Mega." (June 18 Trial Tr. 333:12–336:15; Gov't Resp. 5.) According to the Cash App records, Rankin received approximately $600 for child pornography that he sold. (First PSR Addendum 1, Docket Entry No. 91; Gov't Resp. 5.) Rankin denied ever producing or making child pornography and has not spoken to any minors online, taken pictures of minors, or asked any minors to send him nude pictures. (PSR ¶ 15; Tr. of FBI Interview 20:16–52.)[4]

[4] Rankin also contested that he owed restitution to the victims in connection with the child pornography material at issue in his case. (Def.'s Suppl. Sent'g Mem. re: Restitution,

**b. Standard of review**

**i. Motion to Vacate under 28 U.S.C. § 2255**

Under 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a prisoner in custody pursuant to a sentence imposed by a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if the "sentence was imposed in violation of the Constitution or laws of the United States" or if "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Medunjanin v. United States*, 99 F.4th 129, 133 (2d Cir. 2024) ("Under 28 U.S.C. § 2255(a), a prisoner may petition a district court to 'vacate, set aside or correct' a sentence if 'the sentence was imposed in violation of the Constitution or laws of the United States, . . . or [the sentence] is otherwise subject to collateral attack.'" (alterations in original) (quoting *id.*)); *Gomez v. United States*, 87 F.4th 100, 106 (2d Cir. 2023) ("A federal inmate may move the district court to 'vacate, set aside or correct' a sentence if 'the sentence was imposed in violation of the Constitution or laws of the United States . . . or [the sentence] is otherwise subject to collateral attack.'" (alterations in original) (quoting same)), *cert. denied*, 145 S. Ct. 190 (2024); *Gonzalez v. United States*, 792 F.3d 232, 238 (2d Cir. 2015) ("[A]ll challenges to a [federal] conviction and sentence can [ ] be brought in a [ ] § 2255 motion . . . ."); *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) ("[Section] 2255 is the appropriate vehicle for a federal prisoner to challenge the *imposition* of his sentence." (citing *Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997))). In order to prevail on a Section 2255 petition, a petitioner

---

Docket Entry No. 101.) In a Memorandum and Order dated September 13, 2025, the Court ordered restitution in the amount of $111,000, of which $108,000 plus interest was payable immediately. (Mem. & Order dated Sep. 13, 2025, Docket Entry No. 113.) On February 18, 2026, the Court amended judgment and corrected the amount due to $105,500 plus interest. (Am. J., Docket Entry No. 115.)

must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *see Tavarez v. United States*, 81 F.4th 234, 240 (2d Cir. 2023) ("Our [c]ourt has long reserved § 2255 relief for prejudicial errors that are so grave, they result in a complete miscarriage of justice." (alteration omitted) (citation and quotation marks omitted)). When a defendant attacking his or her sentence is proceeding *pro se*, the court must "read [the defendant's] submissions broadly so as to determine whether they raise any colorable legal claims." *United States v. Parisi*, 529 F.3d 134, 139 (2d Cir. 2008) (citing *Weixel v. Bd. of Educ.*, 287 F.3d 138, 145–46 (2d Cir. 2002)); *see Price v. Hale Glob., Patch*, No. 25-267, 2026 WL 1001826, at *1 (2d Cir. Apr. 14, 2026) (summary order) ("[W]e liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." (alteration in original) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017))); *Wang v. Dreisbach*, No. 24-2249, 2025 WL 2674130, at *1 (2d Cir. Sep. 18, 2025) (summary order) (quoting *Walker v. Senecal*, 130 F.4th 291, 297 (2d Cir. 2025)) (same), *cert. filed*, (Sep. 14, 2026); *Walker*, 130 F.4th at 297 (quoting *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023)) (same); *Brock v. City of New York*, No. 23-1148, 2024 WL 3493495, at *2 (2d Cir. July 22, 2024) (summary order) (quoting same); *Kravitz*, 87 F.4th at 119 (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)) (same). "[I]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [district court] must dismiss the motion." *Seabrook v. United States*, No. 22-841, 2023 WL 7489961, at *2 (2d Cir. Nov. 13, 2023) (summary order) (internal quotation marks omitted)).

**c. Discussion**

Rankin makes three arguments to support his claim that his trial counsel ("Trial Counsel") was ineffective: (1) failure "to conduct adequate investigation into the [G]overnment's attribution of the illicit pornography to him"; (2) failure "to subject the [G]overnment's digital extraction of evidence to any meaningful adversarial testing"; and (3) failure "to adequately prepare for trial." (Pet'r's Mem. 4.) In addition, Rankin argues that these issues both "cumulatively and individually[] demonstrate [that] the outcome of [his] trial would have been different." (*Id.* at 16; *see also* Pet'r's Reply 2.)

The Government argues that each of Rankin's arguments is "wholly speculative" and do not show error. (Gov't's Opp'n 7.) In addition, the Government contends that Rankin "cannot show prejudice" "because of the overwhelming evidence of [his] guilt." (*Id.*)

In response, Rankin argues that the Government "assumes facts that have never been developed, supplies [T]rial [C]ounsel with speculative strategic explanations[,] . . . [and submits] no affidavit from [T]rial [C]ounsel and no other evidence addressing [his arguments]." (Pet'r's Reply 1.) Rankin argues that "summary denial is inappropriate where the claim depends on disputed matters outside the trial record and the existing record does not conclusively resolve them." (*Id.* at 2.) Accordingly, Rankin asks the Court to supplement the record and, if required, conduct an evidentiary hearing. (*Id.* at 11–12.)

"The Sixth Amendment right to counsel 'is the right to the effective assistance of counsel.'" *Buck v. Davis*, 580 U.S. 100, 118 (2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)); *Purcell v. United States*, 158 F.4th 441, 449 (2d Cir. 2025) (quoting same). "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Buck*, 580 U.S. at 118 (citing *Strickland*, 466 U.S. at 687); *see also Sexton v. Beaudreaux*, 585 U.S.

961, 965 (2018) ("To prove ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice." (citing same)); *United States v. Overton*, 24 F.4th 870, 880 (2d Cir. 2022) ("To establish ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's representation 'fell below an objective standard of reasonableness,' and (2) this deficient performance caused prejudice to the defendant — that is, 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (quoting *Strickland*, 466 U.S. at 688, 694)). "Recognizing the 'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence,' . . . counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (first alteration in original) (quoting *Strickland*, 466 U.S. at 690); *see also Bell v. Cone*, 535 U.S. 685, 698 (2002) (stating that "'[j]udicial scrutiny of a counsel's performance must be highly deferential' and that 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time'" (alterations in original) (quoting *Strickland*, 466 U.S. at 689)); *Purcell*, 158 F.4th at 450 (quoting *Strickland*, 466 U.S. at 689) (same); *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (quoting *Jackson v. Conway*, 763 F.3d 115, 153 (2d Cir. 2014)) (same). While it is possible that, in certain instances, even "an isolated error" can support an ineffective assistance claim, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington v. Richter*, 562 U.S. 86, 111 (2011); *see also Carew v. Morton*, 150 F.4th 150, 164 (2d Cir. 2025) ("[E]ven if there is reason to think that counsel's conduct was far from exemplary, a court still may not grant relief if the record does not reveal that counsel took an

approach that no competent lawyer would have chosen." (alteration in original) (quoting *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (per curiam))), *cert. denied*, 146 S. Ct. 1849 (2026).

In reviewing a claim of ineffective assistance of counsel, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *United States v. Garcia*, Nos. 24-923, 24-1468, 2025 WL 1482438, at *4 (2d Cir. May 23, 2025) (summary order) (quoting *Strickland*, 466 U.S. at 689); *see also Bierenbaum v. Graham*, 607 F.3d 36, 51 (2d Cir. 2010) (quoting same). A single error by counsel may require reversal, but it must be "sufficiently egregious and prejudicial" under the totality of the circumstances. *Harrington*, 562 U.S. at 111 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "[A] petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy." *Brown v. United States*, Nos. 20-CV-1509, 16-CR-297, 2023 WL 4551682, at *5 (E.D.N.Y. July 14, 2023) (alteration in original) (quoting *Singleton v. Duncan*, No. 03-CV-561, 2006 WL 73734, at *14 (E.D.N.Y. Jan. 10, 2006)); *United States v. Sadler*, Nos. 18-CV-5923, 16-CR-297, 2021 WL 2037863, at *4 (E.D.N.Y. May 21, 2021) (quoting same); *Singleton*, 2006 WL 73734, at *14 (citing *Jones v. Barnes*, 463 U.S. 745, 752 (1983)).

**i. Trial Counsel's alleged failure to conduct adequate investigation into the Government's attribution of the illicit images to Rankin did not constitute ineffective assistance of counsel**

Rankin argues, first, that Trial Counsel was ineffective because he failed to "investigate, preserve, and present a focused attribution defense challenging the [G]overnment's claim that [Rankin] was the person who knowingly used the devices, accounts, usernames chats, links, files, and transactions underlying the charged offenses." (Pet'r's Mem. 4–5; *see* Pet'r's Reply 3–5.) Rankin contends that the Government established attribution of the various accounts as a

threshold issue, and Trial Counsel "did not meet that theory with a coherent attribution defense." (Pet'r's Mem. 6–7; *see* Pet'r's Reply 3–5.) Rankin acknowledges that Trial Counsel "briefly touched the issue" during trial, but alleges that Trial Counsel never "developed those points into a disciplined defense theory." (Pet'r's Mem. 7 (citing June 18 Trial Tr. 499–500); *see* Pet'r's Reply 3.) Rankin argues that Trial Counsel should have instead "forced the jury to separate ownership from use, association from control, and account linkage from proof of knowing receipt, possession, or distribution." (Pet'r's Mem. 7.) Further, Rankin contends that Trial Counsel "should have investigated who had access to the residence, internet connection, devices, passwords, accounts, phone number, and applications"; "examined whether the relevant Kik and Mega activity could be tied to a particular device, session, IP address, timestamp, or user action"; "tested whether the files and screenshots reflected active user conduct, automatic saving, syncing, restoration, caching, forwarding, or some other mechanism"; and "used a qualified digital-forensic expert where necessary." (*Id.* at 7–8; *see* Pet'r's Reply 3–5.)

Second, Rankin identifies a specific instance that shows "the weakness in the [G]overnment's inferential method" — the Verizon account was subscribed to by Rankin's mother, not him. (Pet'r's Mem. 8.) Rankin argues that Trial Counsel "should have used that point to show that the [G]overnment was relying on association evidence, not direct proof of knowing use." (*Id.*) Third, Rankin contends that Trial Counsel "failed to preserve this attribution issue meaningfully through Rule 29 [of the Federal Rules of Criminal Procedure]" because Trial Counsel "did not identify the specific evidentiary gaps by count" or "explain why the [G]overnment's account-linkage theory failed to prove knowing receipt, knowing possession, or knowing distribution." (*Id.*) Fourth, and as a result, Rankin contends this is "straightforward" prejudice since "[i]f attribution was weakened, [then] the entire case fell apart." (*Id.*) Rankin

argues that "[t]here is a reasonable probability that a focused attribution defense would have created reasonable doubt in at least one juror's mind." (*Id.* at 9.)

The Government argues, first, that Rankin only provides one specific example of where Trial Counsel could have proven attribution of child pornography to Rankin, the Verizon account subscribed to by his mother. (Gov't's Opp'n 7 (citing Pet'r's Mem. 8).) The Government contends that not only was this "likely [a] strategic decision to avoid implicating [Rankin's] mother" but also futile and lacking prejudice because Rankin "indisputably resided with his mother and therefore had access to the IP address obtained through the Verizon account." (*Id.*) Second, the Government contends there was "overwhelming attribution evidence linking [Rankin] to the Mula Dussa Kik account." (*Id.*) Third, the Government argues that Rankin admitted the Mula Dussa Kik account was his, and the same messages were found on his iPhone. (*Id.*) Fourth, the Government contends that all of these aspects of proof of attribution demonstrate Rankin's guilt beyond a reasonable doubt. (*Id.*)

In response to the Government's claim that Rankin only provided one specific example of Trial Counsel's failure to probe attribution of child pornography to Rankin, Rankin points to "a series of specific questions [Trial Counsel] failed to investigate[,]" including "who had access to the residence [and] . . . whether particular account activity could be tied to a specific device." (Pet'r's Reply 3.) Rankin also asserts that nothing in the record established that Trial Counsel "made a 'strategic decision' not to develop the Verizon evidence . . . [and] [t]he Government cannot excuse a failure to investigate by inventing a possible strategy after the fact." (*Id.* at 4 (citing Gov't Opp'n 7).) Rankin also responds to the Government's argument that he admitted that the Mula Dussa Kik account and the iPhone were his, recognized a text conversation and certain images, and supplied the iPhone's password. (*Id.* at 3–4.) Rankin claims that while these

"admissions were unquestionably important evidence[,] . . . acknowledging ownership of an account is not necessarily an admission that [Rankin] personally performed every charged act through that account." (*Id.* at 4.) Put differently, Rankin argues that "[t]he Government's use of the word 'confession' . . . assumes the attribution conclusions [he] contends competent counsel should have tested." (*Id.*) Finally, Rankin asserts that the Government cannot collect all the evidence into a "single mass" and describe it as "overwhelming." (*Id.* at 5 (internal quotation marks omitted).) Instead, Rankin argues, "[t]he Government must . . . prove knowing receipt, knowing possession, and knowing distribution . . . [because they are] separate counts based on different conduct and different evidence." (*Id.*)

At trial, Trial Counsel moved pursuant to Rule 29 for a judgment of acquittal, arguing that:

> [T]he Government did not sustain their burden of proving beyond a reasonable doubt that Mr. Shakeem Rankin possessed, distributed, and received child pornography. I believe that the witnesses all testified about information they gleaned from whether it's an account, whether it's from an iPhone that they attribute to [Rankin], but even the experts couldn't say with any degree of certainty that the documents or the videos that they reviewed was that of [Rankin], that [Rankin] was involved in any of that. Since the . . . burden rests on [the Government], I don't believe that they were able to prove beyond a reasonable doubt that the charged crimes actually took place.

(June 18 Trial Tr. 499:3–21.)

The Government responded that they believe they had "submitted substantial evidence" proving that Rankin "did receive, possess, and distribute child pornography" including "[1] recordings of the Defendant[] admitting that the phone in question was his phone, admitting that the conversation in which he received child pornography was his conversation, and that he had viewed some of that child pornography[;] [2] witnesses' testi[mony] that the child pornography involved real children[;] . . . [3] [the] child pornography [images][;]. . . [4] testimony that it is

child pornography[;] [and] . . . [5] messages for distribution . . . in which [ ] Rankin sent sample images of child pornography on the phone he acknowledged is his." (*Id.* at 499:23–500:21.)

The Court denied Trial Counsel's application on the record after the close of the government's case, stating that:

> The evidence in the record before the Court is overwhelming. The Government has shown in a number of different ways how [Rankin] is tied to the accounts that were used to receive and distribute child pornography and also that this individual possessed the child pornography. A number of the documentary evidence will show that it was [Rankin] who was, in fact, online making these transactions. In addition, [Rankin] admitted to using the names that were identified on the paperwork. So[,] there's more than enough evidence, and there's no question that the images and videos involved child pornography. So[,] I think there's more than enough evidence from which a jury could ultimately conclude that [Rankin] received, possessed, and distributed child pornography.

(*Id.* at 500:24–501:13.) Trial Counsel took exception to the Court's ruling, and the Court stated that it is "ruling on [the] motion based on my review of the evidence or at least what I heard of it," and the jury must make the final decision. (*Id.* at 501:14–501:23.)

The above excerpts from trial demonstrate effective assistance of counsel. The Court is not persuaded by Rankin's argument that Trial Counsel's alleged failure to challenge the Government's "account-linkage theory" or present an attribution defense resulted in ineffective assistance of counsel, as Rankin contends, when there were multiple sources of evidence supporting that Rankin received, possessed, and distributed child pornography including his own admissions. Rankin states that the Government "rel[ied] on association evidence, not direct proof of knowing use" but ignores that he "admitted to using the names that were identified on the paperwork" and therefore directly connected himself to the various accounts. (Pet'r's Mem. 8; June 18 Trial Tr. 501:6–8.)

Furthermore, Rankin's admissions provide support for all three counts. Rankin not only confessed that the Mula Dussa Kik account belonged to him, but he also admitted that he had *purchased* child pornography on Kik, *resold* child pornography that he purchased through CashApp to Kik users, and *distributed* the material he sold using Dropbox and MEGA. (PSR ¶¶ 13–14; June 18 Trial Tr. 361:10– 362:20; Gov't Resp. 2, 5; Tr. of FBI Interview 16:20–17:42, 29:11–29:40.) This confession addressed receipt, possession, and distribution of child pornography. Rankin also told the agents that he did not have a computer and only used his mobile phone, (PSR ¶ 16; Tr. of FBI Interview at 29:42–31:00), and he also admitted that the phone containing the pertinent evidence was his phone, (PSR ¶ 18; Tr. of FBI Interview at 29:42–31:00). Coupled with the evidence presented by the Government during trial, including records of Rankin's admissions, Rankin's messages for distribution, and the child pornography images themselves, the Court is unpersuaded by Rankin's argument that Trial Counsel's strategy caused prejudice.

Rankin's arguments reflect a disagreement with Trial Counsel's defense strategy, and this is insufficient to prevail on an ineffective assistance of counsel claim. *See Brown*, 2023 WL 4551682, at *5 ("[A] petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy." (alteration in original) (quoting *Singleton*, 2006 WL 73734, at *14)). Based on the "overwhelming" evidence of attribution, the Court cannot say that Rankin has "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *See Strickland*, 466 U.S. at 689 (internal quotation marks omitted) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). This argument in support of Rankin's Petition therefore fails.

### ii. Trial Counsel's alleged failure to subject the Government's digital extraction of evidence to adversarial testing did not constitute ineffective assistance of counsel

Rankin argues that Trial Counsel was ineffective for "failing to effectively investigate, preserve, and litigate the chain-of-custody, forensic-handling, extraction, and stipulation issues concerning the iPhone evidence." (Pet'r's Mem. 9.) First, Rankin contends that the Government's case was "built on digital evidence, account linkage, and phone extraction results," (*id.* at 11), and Trial Counsel failed to challenge the Government's evidence and "use the available chain and forensic records to test the reliability and weight of the [G]overnment's proof," (*id.* at 9). Rankin acknowledges that Trial Counsel could not have won exclusion of the iPhone, but that Trial Counsel "appeared to recognize a potentially important forensic handling issue, but failed to develop it at the proper time, through the proper witness, or in a form the jury could understand." (*Id.* at 10; *see* Pet'r's Reply 6.) For example, Rankin argues that the trial transcript shows that Trial Counsel "attempted to revisit the chain of custody issue" after an FBI agent, Agent Tassone, testified to demonstrate that other agents and the Assistant United States Attorney handled the iPhone, but their handling of the iPhone was not fully addressed in Agent Tassone's testimony. (Pet'r's Mem. 10 (citing June 20, 2024 Trial Tr. ("June 20 Trial Tr.") 538–539, Docket Entry No. 77); Pet'r's Reply 6.) Rankin contends that the Court "did not treat the issue as [Trial C]ounsel framed it," but "[i]nstead, the Court stated that Agent Tassone's testimony [was] clarified, and that, at most, the record reflected confusion."[5] (Pet'r's Mem. 10

[5] Trial Counsel argued that Agent Tassone testified that "she only let [Rankin's iPhone] out of evidence once," but the exhibit documenting chain-of-custody reflected additional handling by additional FBI agents. (June 20 Trial Tr. 536:2–540:4.) The Court disagreed with Trial Counsel's characterization of Agent Tassone's testimony, stating that "[t]here's no question that she clarified as to how many times she removed it" from evidence for review by other agents. (*Id.* at 541:9–22.) The Court also noted that initially the testimony was confusing, "I do recall at the time being somewhat confused about the testimony," (*id.* at 541:20–21), but it was

(citing June 20 Trial Tr. 536).) Rankin contends that the Government argued that Trial Counsel could have asked about those entries during cross-examination, but had not done so. (*Id.* (citing June 20 Trial Tr. 540–541).)

Rankin points to this exchange as a missed opportunity by Trial Counsel to probe deeper during cross-examination into the chain-of-custody. (*Id.* at 10–11; *see* Pet'r's Reply 7–8.) He argues that Trial Counsel "did not preserve the issue in a meaningful way because [Trial Counsel] did not execute it when the witness was available" and inquire into "each transfer, each handler, each date, each extraction event, and each point at which the phone or its data may have been accessed, copied, reviewed, redacted, or transmitted." (Pet'r's Mem. 10.) As a result, Rankin contends that "the Court [had to] treat[] [the chain-of-custody issue] as a belated evidentiary dispute rather than as a developed trial defense." (*Id.*)

Second, Rankin argues that Trial Counsel failed to "use[] the chain records for more than an admissibility objection" such as "to meaningfully test the government's narrative of reliability." (*Id.* at 10–11.) Third, Rankin contends that the "extraction stipulation makes the failure more serious" because "[i]f counsel entered that stipulation without first investigating the extraction process, reviewing the forensic reports and notes, consulting a defense expert, or understanding what foundational and confrontation issues were being conceded, then the stipulation did not reflect sound strategy." (*Id.* at 11; *see* Pet'r's Reply 6 ("The record also contains an apparent factual issue concerning who performed which extraction and what work was covered by the parties' stipulation. . . . The present submissions do not explain whether these references concern different extractions, different stages of the forensic process, or separate

---

clarified and therefore the Court concluded, "the testimony in the record is not inconsistent with the [chain-of-custody] document," (*id.* at 542:9–10).

responsibilities performed by different individuals.”).) Fourth, Rankin argues that Trial Counsel should have used an expert to determine chain-of-custody and extraction issues. (Pet’r’s Mem. 11.; Pet’r’s Reply 8.) Fifth, Rankin contends that Trial Counsel “failed to preserve a related confrontation issue to the extent the [G]overnment introduced testimonial forensic assertions through witnesses who did not personally perform or observe the relevant work.” (Pet’r’s Mem. 11–12; *see* Pet’r’s Reply 8.) Rankin states that his claim “does not assume a freestanding Confrontation Clause violation” but instead asserts that this issue should have been preserved “if the [G]overnment’s digital-forensic proof depended on testimonial assertions from an absent examiner, extraction analyst, report author, or forensic reviewer.” (Pet’r’s Mem. 12.) Sixth, Rankin argues that “[t]he point is not [that] the phone necessarily would have been excluded,” but that “the jury would have had a concrete reason to question the reliability and weight of the digital proof” if Trial Counsel “had competently developed the chain-of-custody and forensic-handling issues.” (*Id.*)

The Government argues, first, that Trial Counsel did cross-examine the FBI examiner who extracted Rankin’s iPhone. (Gov’t’s Opp’n 7.) Second, the Government contends that Rankin confessed to the messages and the messages were found on the seller’s iPhone, “rendering the FBI examiner’s testimony about the extraction of [Rankin’s] own iPhone (and any cross-examination related to the extraction) redundant.” (*Id.*) Third, the Government argues that even if Trial Counsel had failed to sufficiently challenge the evidence on Rankin’s iPhone, that would not demonstrate prejudice because there was additional evidence supporting Rankin’s guilt — the seller’s phone, the attribution evidence, and Rankin’s confession. (*Id.*)

In response to the Government’s argument pertaining to cross-examination of the FBI examiner who extracted Rankin’s iPhone, Rankin states that “[t]he fact that some cross-

examination occurred does not establish constitutionally adequate investigation or adversarial testing." (Pet'r's Reply 5.) Rankin argues that Trial Counsel's cross-examination was insufficient to "establish the relevant facts through the proper witnesses while those witnesses were available." (*Id.* at 6.) Rankin also characterizes the Government's redundancy argument as "materially overbroad." (*Id.* at 7.) Rankin asserts that:

> [While t]he copy of the conversation recovered from [the seller]'s phone may independently corroborate the April 2021 transaction underlying Count One[, i]t does not independently authenticate the . . . images and videos allegedly recovered from [Rankin's] iPhone[,] . . . establish the reliability of the October 2021 Kik conversation and files used to support Count Three[, or] . . . establish that the exhibits selected and presented at trial accurately reflected the underlying forensic data recovered from [Rankin]'s device.

(*Id.*) Similar to Rankin's response to the Government on the attribution defense, Rankin argues that "[t]he counts must be considered separately." (*Id.*)

At trial, Trial Counsel raised the issue of the chain-of-custody of Rankin's iPhone by the FBI agents and argued that the FBI agent's testimony regarding the handling of the iPhone did not match the evidence in the record. (*See* June 20 Trial Tr. 536:2–540:4.) The Court determined that while there was initially some confusion regarding "how many times [the iPhone] was removed from [the FBI agent's] presence," the agent's testimony was consistent with what was in the record. (*Id.* at 541:9–22.) The Court further explained that "while [the FBI agent] may very well have not given [ ] all of the information when [ ] questioned [ ], there's no question about the fact that all of that information is, in fact, in the record that is before the jury." (*Id.* at 542:12–18.)

Rankin fails to identify any prejudice from the alleged omitted line of questioning regarding the chain-of-custody of the iPhone. The Court is not persuaded that any further questioning, whether of the FBI agent or an expert, would have affected the outcome of the trial.

While Rankin disagrees with the Government's assertion that further testimony would have been redundant, his argument ignores his own admission, which does support receipt, possession, and distribution of child pornography. Rankin argues that Trial Counsel could have pursued more of a reliability challenge to the Government's extraction evidence, but as explained *supra*, the record reflects "overwhelming" evidence of Rankin's guilt, notwithstanding the extraction evidence. *See Wilkins v. Miller*, No. 24-CV-351, 2026 WL 2176789, at *13 (N.D.N.Y. July 29, 2026) (holding that trial counsel was not ineffective for failing to further question a witness about DNA evidence because the petitioner failed to show how it would have changed the outcome of the trial since the DNA evidence was consistent with the testimony of several witnesses in the record). Rankin seemingly acknowledges that an alternative line of questioning would have been unsuccessful by stating that further inquiry by Trial Counsel would not have resulted in the exclusion of the iPhone from evidence. (*See* Pet'r's Mem. 12.) Trial counsel is not required to inquire into every possible theory of investigation to be effective. *See Greiner v. Wells*, 417 F.3d 305, 321, 325 (2d Cir. 2005) ("[C]ourts have found deficient performance where counsel's conduct resulted from an entirely absent investigation, [but the duty to investigate] . . . does not, however, compel defense counsel to investigate comprehensively every lead or possible defense." (citations omitted)).

Ultimately, Trial Counsel's failure to pursue a line of questioning regarding every handling of the iPhone and the extraction of evidence would not have altered the conclusion, which Rankin confessed to, that the iPhone and messages were his, and the Court will not second-guess Trial Counsel's strategy. *See United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and . . . [the court] should not [have] second-guess[ed] . . . unless there is no strategic or

tactical justification for the course taken."); *Vilar v. United States*, Nos. 17-CV-1491, 05-CR-621, 2019 WL 3537052, at *7 (S.D.N.Y. Aug. 2, 2019) (finding that the "[p]etitioners' assertion that a different approach to cross-examination could have 'put the case in a different light' [fell] far short of establishing the absence of strategic or tactical justification for the method selected by trial counsel" (citation omitted)).

In addition, there were two extractions of Rankin's phone, and Trial Counsel did examine a witness with respect to each. The first extraction occurred the same day as the search of Rankin's residence, (June 18 Trial Tr. 425:19–23), and the digital forensic examiner testified regarding that extraction, (*see id.* at 425:24–426:21). The second extraction occurred a few weeks prior to trial, (*id.* at 425:22–427:3), by an FBI agent who did not testify, Agent Spivack, (*id.* at 426:4–8); however, the FBI agent who did testify, Agent Tassone, testified that she was sitting next to Agent Spivack when he performed the second extraction, (*id.* at 428:19–23). The parties also stipulated at trial to "the types of software programs utilized by [Agent Spivack] to conduct his extraction" and that GrayKey software was used for the extraction. (June 20 Trial Tr. 568:3–10.)

A potential Confrontation Clause violation exists when a forensic laboratory report is introduced without supporting testimony. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 328–29 (2009). However, the Court finds no Confrontation Clause violation because the parties stipulated to the facts concerning the extraction by Agent Spivack. *See United States v. Stitsky*, 536 F. App'x 98, 107 (2d Cir. 2013) ("[T]he stipulation effectively waived defendants' right of confrontation."); *United States v. Plitman*, 194 F.3d 59, 64 (2d Cir. 1999) ("[D]efense counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound."); *Mayrant v. Wolcott*, No. 20-CV-9324,

2025 WL 2106654, at *12 (S.D.N.Y. July 28, 2025) ("The Confrontation Clause does not prohibit parties from stipulating to the content of testimonial evidence without an opportunity to confront, especially considering that a strategically worded stipulation may be advantageous to the defendant." (citing *Melendez-Diaz*, 557 U.S. at 328)), *appeal dismissed*, No. 25-1997, 2026 WL 2161976 (2d Cir. Feb. 24, 2026), *cert. filed*, No. 26-5157 (July 17, 2026).

While Rankin takes issue with the extraction stipulation, there is no evidence in the record that the stipulation was unreasonable or that Rankin was prejudiced by the stipulation. *See United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) ("As with trial decisions to offer or stipulate to certain evidence, decisions such as when to object and on what grounds are primarily matters of 'trial strategy and tactics,' and thus are 'virtually unchallengeable' absent exceptional grounds for doing so." (first quoting *Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997); and then quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004))). Moreover, Trial Counsel cross-examined the digital forensic examiner who performed the initial extraction, (June 18 Trial Tr. 317:9–327:12), and the Court therefore finds there is no Confrontation Clause concern.

As a result, Rankin has given the Court no reason to doubt Trial Counsel's approach to the extraction evidence, and Rankin's 2255 motion fails on this claim.

**iii. Trial Counsel's alleged failure to adequately prepare witnesses for trial did not constitute ineffective assistance of counsel**

Rankin argues that Trial Counsel was ineffective for "failing to timely prepare defense witnesses before the defense case began." (Pet'r's Mem. 13.) First, Rankin cites to *Pavel v. Hollins* to argue that the "Second Circuit has recognized that counsel's failure to prepare a defense and failure to call important witnesses can support an ineffective-assistance claim." (*Id.* (citing 261 F.3d 210, 216–22 (2d Cir. 2001)).) Second, Rankin points to an exchange from his trial to support that Trial Counsel was not ready to present the defense case when the

Government was nearing the end of its proof. (*Id.* at 14; Pet'r's Reply 9.) In this exchange, the Court asked whether counsel would be ready to present witnesses, and Trial Counsel replied that he was not and needed more time to prepare one witness. (Pet'r's Mem. 14 (citing June 18 Trial Tr. 452).) The Court responded that Trial Counsel should have prepared witnesses in advance of trial. (*Id.* (citing June 18 Trial Tr. 453).) Third, Rankin argues that failure to prepare witnesses "left [Trial C]ounsel unable to present the defense witnesses with discipline and purpose" and as a result, the testimonies from his mother and brother were "fragmented and vulnerable." (*Id.*; *see* Pet'r's Reply 9–10.) Rankin contends that his mother's testimony "was limited by the timing of the photograph and by the collateral nature of the door-damage issue," (Pet'r's Mem. 14 (citing June 18 Trial Tr. 453–454)),[6] and his brother's testimony was contradictory because he stated he heard "loud bangs" and saw a battering ram afterwards but also that he did not actually see a battering ram used because he was asleep, (*id.*).

Fourth, Rankin argues that Trial Counsel's "lack of preparation caused the defen[s]e case to drift toward collateral search-entry disputes rather than the issues that mattered most, issues such as attribution, access, seizure, handling, and the reliability of digital evidence." (*Id.* at 14–15.) Rankin contends that the testimony of his family witnesses "did not directly answer the [G]overnment's core theory that [Rankin] was the knowing user behind the relevant device and account activity." (*Id.* at 15.) As a result, Rankin argues there is prejudice because Trial Counsel's "lack of preparation prevented the defense from presenting its only live witnesses in a coherent way tied to the actual elements of the offenses." (*Id.*)

[6] Rankin's mother testified about the search of her residence, where Rankin resided, including that law enforcement officers banged on the door and that she had not heard of or used various iPhone applications such as Kik or Telegram. (*See* June 18 Trial Tr. 509:11–527:9.)

Fifth, Rankin contends that this failure to prepare witnesses "cannot be excused as strategy," and therefore afforded deference, because the record shows that Trial Counsel had failed to prepare a witness. (*Id.*) Sixth, Rankin argues that "[t]here is a reasonable probability that adequate preparation would have changed the way the jury assessed the defense." (*Id.* at 16.)

The Government argues, first, that Rankin takes one quote by Trial Counsel out of context and then "speculates that [Trial C]ounsel failed to prepare for trial." (Gov't's Opp'n 7.) Instead, the Government contends that Trial Counsel had requested a recess until the following day to prepare two witnesses, the Court had admonished Trial Counsel for failing to prepare the witnesses in advance, and Trial Counsel explained that those witnesses' preparation "depend[ed] on the ebb and flow of what the [G]overnment has put on." (*Id.* (quoting June 18 Trial Tr. 453:7–9).) The Government argues that this is "a far cry from ineffective assistance" and instead shows that Trial Counsel was "endeavoring to prepare witnesses effectively based on the evidence in the case." (*Id.*)

In response, Rankin argues that the exchange between Trial Counsel and the Court "may show that [Trial Counsel] wanted to discuss the Government's trial presentation with the witnesses before they testified[,] . . . [b]ut it does not establish that counsel had adequately interviewed and prepared those witnesses before trial." (Pet'r's Reply 9.) Rankin argues that accepting the Government's interpretation "would require a factual finding about [Trial C]ounsel's preparation based on an incomplete record." (*Id.*)

At trial, when the Court asked Trial Counsel if he would be ready to present the witnesses, Rankin's mom and brother, Trial Counsel stated that he needed additional time. (June 18 Trial Tr. 452:11–456:2.)

> Trial Counsel: I won't be ready to put [the witness] on this afternoon, Your Honor. I'd be ready to put [the witness] on first thing Thursday morning [the following day of scheduled trial].
>
> The Court: We're on trial, [Trial Counsel]. That means your witnesses have to be ready to testify at any time during the trial. Is there any reason why [the witnesses] would not be available to testify?
>
> Trial Counsel: [The witness] needs to be adequately prepared and that hasn't happened because —
>
> The Court: That's something you should have done in advance of trial, not in the middle of trial.
>
> Trial Counsel: Well, while I agree with Your Honor where that's concerned, a lot of it depends on the ebb and flow of what the government has put on, Your Honor.
>
> The Court: I understand but we're talking about, at most, what are we talking about, two witnesses. . .?

(*Id.* at 452:20–453:11.)

The Court finds that this exchange reflects the Court's discontent with the delay caused by the additional time required by Trial Counsel to prepare witnesses, but it does not show that Trial Counsel failed to prepare witnesses adequately or that Trial Counsel was unprepared for trial, as Rankin contends. (*See* Pet'r's Mem. 15.) Trial Counsel presented Rankin's mother as the first witness during the afternoon session of trial that day, and Trial Counsel informed the Court that he was ready to present her and that she was prepared to testify. (June 18 Trial Tr. 502:1–6.) The Court allowed additional time for Trial Counsel to prepare Rankin's brother and to accommodate the work schedule of Rankin's brother and allowed him to testify during the next day of trial. (*Id.* at 502:7–13.)

Rankin also argues that Trial Counsel incorrectly focused on "collateral search-entry disputes rather than the issues that mattered most, issues such as attribution, access, seizure, handling, and the reliability of digital evidence," (*see* Pet'r's Mem. 14–15), but Rankin has

presented the Court with no rationale to support that his two family member witnesses, his mom and brother, had any knowledge of relevant digital evidence or the ability to testify to such matters. Rather than supporting that Trial Counsel was unprepared, Rankin's arguments reflect disagreement with Trial Counsel's strategy, and this is insufficient to support an ineffective assistance of counsel claim. *See Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) ("Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel."); *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986) ("A defendant . . . may not claim ineffective assistance of counsel merely because . . . he thinks counsel's trial strategy was inadequate."); *accord United States v. Keith*, Nos. 20-CV-4410, 15-CR-827, 2022 WL 2657188, at *6 (S.D.N.Y. July 8, 2022) ("Simple disagreement with counsel's chosen strategy, especially with the benefit of hindsight, is insufficient to support an ineffective assistance of counsel claim.").

Finally, Rankin's demand for proof that Trial Counsel adequately interviewed and prepared witnesses for trial is not required to show adequate assistance of counsel, especially when "*Strickland* [ ] does not require defense counsel to call any particular witness." *United States v. Nolan*, 956 F.3d 71, 82 (2d Cir. 2020) (citing *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)); *see also Figueroa v. Schiraldi*, No. 10-CV-1821, 2013 WL 3486925, at *8 (S.D.N.Y. July 8, 2013) (explaining that counsel's choice to not speak with any potential witnesses in advance of trial was insufficient to establish ineffective assistance of counsel when counsel examined all witnesses at trial in a manner that supported reasonable theories of innocence). As a result, Rankin fails to show ineffective assistance of counsel by arguing Trial Counsel was unprepared for trial.

**iv. The cumulative effect of the alleged errors does not constitute ineffective assistance of counsel**

Rankin argues that "attorney errors must be assessed in the aggregate where multiple failures combine to weaken the defense presentation." (Pet'r's Mem. 13 (citing *Lindstadt v. Keane*, 239 F.3d 191, 199–205 (2d Cir. 2001)).) Rankin contends that Trial Counsel's cumulative errors "demonstrate [that] the outcome of th[e] trial would have been different and satisfies the prejudice prong of the [*Strickland*] analysis." (*Id.* at 16–17.)

The Government argues that Rankin failed to present any error "that would merit any relief under § 2255." (Gov't's Opp'n 7.) Further, the Government contends that "the standard set by *Strickland* is high," and "in light of [Rankin]'s confession and the overwhelming evidence of his guilt, [Rankin] is flatly unable to meet this bar." (*Id.* at 7–8.)

In his Reply, Rankin argues that "[t]he Government applies an improperly demanding prejudice standard." (Pet'r's Reply 10.) Rankin states that he "need not establish that acquittal certainly would have resulted or prove a different outcome by a preponderance of the evidence." (*Id.*) Instead, Rankin claims "[h]e must demonstrate a reasonable probability of a different result, a probability sufficient to undermine confidence in the outcome." (*Id.*)

The Court finds that Trial Counsel did not commit error as to any of the challenges raised in the Petition, and Rankin has not shown any prejudice. In addition, the Government applied the proper prejudice standard, as the language Rankin contests comes directly from *Strickland*. 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") Rankin's view of the legal standard would also contravene the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See Garcia*, 2025 WL 1482438, at *4 (quoting *Strickland*, 466 U.S. at 689). Given the extensive evidence of

Rankin's guilt, the fact that Rankin's challenges do not individually demonstrate ineffective assistance of counsel, and the high bar set by *Strickland*, there can be no cumulative effect that would sustain an ineffective assistance of counsel claim. *See United States v. Gramins*, 939 F.3d 429, 456–57 (2d Cir. 2019) ("Because we conclude that the admission of [the witness's] testimony did not constitute error at all, we necessarily conclude that this case does not present the same 'combination of errors' that the district court believed amounted to 'cumulative prejudice.'"); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999) ("[T]he accumulation of non-errors does not warrant a new trial.").

**v. An evidentiary hearing is not warranted**

An evidentiary hearing on Rankin's claims is not warranted because the record conclusively establishes that he is not entitled to relief and there are no material facts in dispute.

"Section 2255 requires the district court to hold a hearing, or to 'use methods . . . to expand the record without conducting a full-blown testimonial hearing,'" *Allen v. Grist Mill Cap. LLC*, 88 F.4th 383, 397 (2d Cir. 2023) (alteration in original) (quoting *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)), "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," *id.* (alteration in original) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)); *see United States v. Jackson*, No. 23-6281, 2024 WL 4878534, at *2 (2d Cir. Nov. 25, 2024) (summary order) (quoting 28 U.S.C. § 2255(b)). "The procedure for determining whether a hearing is necessary is in part analogous to a summary judgment proceeding. If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (alterations omitted) (quoting *Puglisi*, 586 F.3d at 213); *Santillan v. United States*, Nos. 20-CV-7846, 13-CR-138, 2024 WL 4276183, at *5 (S.D.N.Y. Sep. 24, 2024) (quoting same); *see Milman v. United States*, No. 24-453, 2025 WL 3264896, at *2 n.3 (2d Cir. Nov. 24, 2025)

(summary order) (rejecting the petitioner's argument that the district court erred by not holding an evidentiary hearing on her 2255 petition because "no 'material issue of fact [was] in dispute'" (alteration in original) (quoting *United States v. Tribote*, 297 F.2d 598, 600 (2d Cir. 1961))). The Second Circuit has noted, however, that a hearing is not required if a petitioner's allegations are "vague, conclusory, or palpably incredible," *Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)); *Herring v. United States*, Nos. 20-CV-9752, 16-CR-302, 2025 WL 3124678, at *4 (S.D.N.Y. Nov. 6, 2025) (quoting same), and "'[a] district court has the power to dismiss the petition on the merits *without prior notice*' if it is clear 'that the petitioner is not entitled to relief,'" *Seabrook*, 2023 WL 7489961, at *2 (quoting *Ethridge v. Bell*, 49 F.4th 674, 682 (2d Cir. 2022)). *See also Jackson*, 2024 WL 4878534, at *2 ("The Supreme Court has made clear that a movant is not 'always' entitled 'to appear in a district court for a full hearing' pursuant to section 2255, and we ourselves have routinely permitted district courts 'to choose a middle road that avoid[s] the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing.'" (alteration in original) (first quoting *Machibroda*, 368 U.S. at 495; and then quoting *Chang*, 250 F.3d at 86)); *Margolies v. United States*, No. 23-370, 2024 WL 4501907, at *2 (2d Cir. Oct. 16, 2024) (summary order) ("[T]o obtain a hearing, a claimant 'need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim.'" (quoting *Raysor*, 647 F.3d at 494)); *United States v. Van Manen*, No. 18-CR-30, 2024 WL 3924676, at *5 (S.D.N.Y. Aug. 23, 2024) ("[U]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the

United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." (quoting 22 U.S.C. § 2255(b))).

The Petition and record conclusively establish that Rankin is not entitled to a hearing because Rankin's arguments supporting his ineffective assistance of counsel claim do not plausibly support the first prong of the *Strickland* test, *see Margolies*, 2024 WL 4501907, at *2, or demonstrate prejudice. Moreover, none of his claims raise material disputed facts that warrant an evidentiary hearing. *See Raysor*, 647 F.3d at 494; *see also Puglisi*, 586 F.3d at 214 ("[A] district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding.") (collecting cases); *Oruche v. United States*, Nos. 22-CV-6725, 20-CR-657, 2024 WL 3728702, at *5 (S.D.N.Y. Aug. 7, 2024) (quoting *Puglisi*, 586 F.3d at 214).

The Court therefore declines to hold an evidentiary hearing.

## II. Conclusion

For the foregoing reasons, the Court denies Rankin's Petition pursuant to 28 U.S.C. § 2255.

Dated: September 22, 2026
Brooklyn, New York

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge